### Ezra E. Staninger et al. v. Lucy May Tabor.

1. STATUTE OF LIMITATIONS—*When it Begins to Run.*—The statute of limitations affects only the remedy and does not commence to run until the party to be barred has a right to invoke the aid of the court to enforce his remedy.

2. STATUTES—*Section 132, Criminal Code—What Purchases of Grain for Future Delivery Come Within Meaning of.*—In order to bring purchases and sales for the future delivery of grain within the meaning of the statute, there must be a mutual intention upon the part of the seller and the buyer that the grain shall not be delivered or received. Such intention may be established, not merely by the assertions of the parties in that particular transaction, but by all the attending circumstances which may include similar transactions made with other persons at the same time and place.

3. STATUTORY PENALTIES—*Right of Defendant to Attack Good Faith of Prosecution to Recover Money Lost at Gambling.*—In a suit brought to recover treble the amount of the losses, the defendant should be allowed to prove, if he can, that while the suit is being prosecuted in the name of a third party, it is really and truly the suit of the loser and that he and the plaintiff have conspired together for the purpose of mulcting the defendant into the heavy penalty provided by the statute.

4. SAME—*Proof of Bad Faith of Prosecution Admissible Under the General Issue.*—Proof of bad faith of the prosecution under section 132 of the Criminal Code, such action being an action in case, is admissible under the general issue.

5. INSTRUCTIONS—*Belief of Jury Should be Based upon Evidence.*—Instructions to the jury should direct them that their belief upon disputed questions of fact should be based upon the evidence, and any instruction which does not contain the element of a finding "from the evidence" is vicious.

6. VENUE—*Where Action for Penalties Must be Brought.*—A suit to recover treble the amount of money lost by gambling is an action for a penalty and must be brought in the county where the gambling was done and the money lost. It is a real action and not transitory.

7. ASSIGNMENT—*Of Funds in Bank by Check.*—Where one delivers a

check for the payment of money out of funds which he has on deposit subject to check, it is an assignment *pro tanto*.

**Trespass on the Case.**—Prosecution under section 132 of the Criminal Code. Appeal from the Circuit Court of Moultrie County; the Hon. WILLIAM G. COCHRAN, Judge presiding. Heard in this court at the November term, 1901. Reversed and remanded. Opinion filed June 20, 1902.

CRAIG & KINZEL, attorneys for appellants.

JOHN R. EDEN, J. K. MARTIN and E. J. MILLER, attorneys for appellee.

MR. JUSTICE HARKER delivered the opinion of the court.

This is a suit brought by appellee to recover treble the amount of money lost by her husband, W. M. Tabor, to appellants, by gambling in futures in grain and provisions. It is based upon section 132 of the Criminal Code, which reads as follows:

"Any person who shall, at any time or sitting, by playing at cards, dice or any other game or games, or by betting on the side or hands of such as do game, or by any wager or bet upon any race, fight, pastime, sport, lot, chance, casualty, election of unknown or contingent event whatever, lose to any person so playing or betting, any sum of money or other valuable thing, amounting in the whole to the sum of $10, and shall pay or deliver the same, or any part thereof, the person so losing and paying or delivering the same shall be at liberty to sue for and recover the money, goods or other valuable thing, so lost and paid or delivered, or any part thereof, or the full value of the same, by action of debt, replevin, assumpsit or trover or proceeding in chancery, from the winner thereof, with costs, in any court of competent jurisdiction. In any such action at law it shall be sufficient for the plaintiff to declare generally, as in actions of debt or assumpsit, for money had and received by the defendant to the plaintiff's use, or as in actions of replevin or trover upon a supposed finding and the detaining or converting the property of the plaintiff to the use of the defendant, whereby an action hath accrued to the plaintiff according to the form of this act, without setting forth the special matter. In case the person who shall lose such sum or other thing, as aforesaid, shall not, within six months, really and *bona fide*, and without covin or collusion, sue,

and with effect prosecute, for such money or other thing, by him lost and paid or delivered, as aforesaid, it shall be lawful for any person to sue for, and recover treble the value of the money, goods, chattels and other things, with costs of suit, by special action on the case, against such winner aforesaid, one-half to use of the county, and the other to the person suing."

To the declaration were interposed the general issue and a special plea setting up the two years' statute of limitations. Upon issue joined a trial by jury was had, which resulted in a verdict and judgment in favor of appellee for $1,500.

The evidence shows that appellants, in 1898, were in the grain brokerage business at Mattoon, Illinois, and conducted speculations on the Chicago Board of Trade through Lamson Bros., a commission firm at Chicago. In the fall of that year they opened a branch office at Sullivan, Illinois, and placed the same in charge of one James Bathe. In the Sullivan office a blackboard was kept on which market quotations were placed as they were received, every fifteen minutes, by telephone from Mattoon. Bathe's duties were to receive quotations, place them upon the blackboard, receive orders from customers and telephone the orders to the Mattoon office. When the orders were received at the Mattoon office they were wired to Lamson Bros. at Chicago. Appellee's husband became a customer on December 22, 1898, and between that date and the 11th of March, 1899, traded quite frequently. He gave orders to Bathe at first and paid him something over $300. He then began trading at the Mattoon office. He lost in all up to March 11, 1899, the day on which he ceased trading, $1,040.

It is contended that this being an action for penalty, it is barred because the suit was not commenced until March 15, 1901, more than two years after the last payment was made. Section 14, Chapter 83, Rev. Stat., provides that actions for statutory penalty "shall be commenced within two years next after the cause of action accrued." Tabor had six months in which to sue. Appellee had no right to bring suit until the expiration of that period. It is plain,

therefore, that no action accrued to her until six months after March 11, 1899, and the statute did not begin to run till the end of that six months. The statute of limitations affects only the remedy and does not commence to run until the party to be barred has a right to invoke the aid of the court to enforce his remedy.

It is contended that the court committed error against appellants in permitting appellee's witnesses to testify as to appellants' dealing with other customers than W. M. Tabor. We think such proof was entirely proper. If appellants were running a mere "bucket shop" instead of doing a legitimate brokerage business, what higher proof of that fact could be furnished than evidence of their course of dealings with customers generally? The testimony of Tabor clearly shows that the deals set on foot at the Sullivan office were nothing more than gambling contracts and that it was never contemplated by the parties that either the grain or the pork contracted for should be received or delivered. He was contradicted by Bathe and Staninger. In view of the conflict, it certainly was proper to show that in the dealings of appellants with their other customers at the same place, no grain or provisions were ever received or delivered. In order to bring purchases and sales for the future delivery of grain within the meaning of the statute sued upon, there must be a mutual intention upon the part of the seller and the buyer that the grain shall not be delivered or received. Such intention may be established, not merely by the assertions of the parties in that particular transaction, but by all the attending circumstances which may include similar transactions made with other persons at the same time and place. Jamieson et al. v. Wallace, 167 Ill. 388.

It is contended that the court erred in permitting Tabor to testify that he had no intention of receiving the grain when he ordered the same from appellants. The objection urged to such testimony is that he did not communicate his intention to appellants. In connection with his statement as to what Bathe told him when urging him to speculate,

there was nothing harmful or improper in the testimony. He stated: "Bathe told me that if I wanted to buy 1,000 bushels of wheat, I had to pay $10; if the market went up a cent I could close it out at a gain of $10; if it went down a cent, at a loss of $10; said there was no delivery about it; said they simply dealt on the margin." He gave like testimony as to Staninger's representations to him. If those statements be true, it is manifest that appellants had no intention of receiving or delivering grain bought or sold for future delivery, but intended to settle by the payment of differences between the contract price and the future market price at some time after making the deal. To invalidate a contract for the purchase and sale of grain in the future, the intention of both parties to settle by the payment of differences must be shown. Having given testimony which clearly indicated appellants' intention, it was entirely proper for him to testify that he had a like intention in the transaction. How can it be said that appellants were prejudiced by Tabor's testimony upon the ground that he did not communicate his intention to them? By embarking in the speculation after the explanation of Bathe, above quoted, his intention was made manifest to them. Can any person familiar with this record believe for one moment that any one of the many deals would have been declared off by appellants had Tabor declared to them that he had no intention of taking the grain contracted for?

The statute upon which this suit is based contemplates that the loser in a gambling contract shall recover only the amount of his losses. If he elects to sue, he must do so within six months, and must prosecute his suit in good faith, without covin or collusion. He can not wait the six months and then maintain an action in the name of his wife or some other person for the purpose of recovering against the winner treble the amount of his losses. Such a thing would be fully as iniquitous as his original gambling contract. It would be far more despicable. We hold, therefore, in a suit brought to recover treble the amount of the losses, that the defendant should be allowed to prove, if

he can, that while the suit is being prosecuted in the name of a third party it is really and truly the suit of the loser, and that he and the plaintiff have conspired together for the purpose of mulcting the defendant into the heavy penalty provided by the statute. Cole v. Appleburg, 136 Mass. 525. We hold, too, that this being an action in case such proof is admissible under the general issue.

An effort was made to show to the jury that such a conspiracy existed between Tabor and his wife, so it is urged, but the court refused to allow the proof. We desire to express no opinion as to how far the offer made tended to prove such conspiracy or collusion, but as the judgment will be reversed for other reasons and the cause remanded for another trial, we desire that the trial court shall have our views upon the right of a defendant to attack the good faith of the prosecution. Of course, statements made by Tabor, out of the hearing and without the knowledge or acquiescence of his wife, could be heard only by way of impeaching him as a witness.

Instructions to the jury should direct them that their belief upon disputed questions of fact should be based upon the evidence, and any instruction which does not contain the element of a finding " from the evidence " is vicious. Appellee's fifth and eighth instructions do not contain that element and are for that reason bad. Her ninth instruction is erroneous for that reason and the additional one that it makes appellants liable for losses of Tabor independent of whether the losses occurred in a gambling transaction as set up in the declaration.

A suit to recover treble the amount of money lost by gambling is an action for a penalty and must be brought in the county where the gambling was done and the money lost.

In other words the action is local and not transitory. Johnson v. McGregor, 157 Ill. 350; Chap. 28, Rev. Stat. Ill.; 31 Stat. Elizabeth, Ch. 5, Sec. 2; Tidd's 1, 3d Am. Ed., Sec. 340. It does not appear from the evidence that Tabor lost more than $315 on orders given at Sullivan. Three hundred and fifteen dollars he paid in bank checks to Bathe.

He stated that he paid money to Bathe besides the checks, but his testimony was so vague on that point that a finding for money paid to Bathe, aside from the checks, could not be sustained. It is clear, then, that the amount of damages are excessive by $555. But it is contended that as the losses suffered by Tabor on deals made at Mattoon, in Coles county, were paid through checks drawn on Tabor's bank account at Sullivan, the losses were paid in Moultrie county and could, therefore, be included in appellee's recovery. We entertain a contrary opinion. When Tabor delivered to Staninger a check for the payment of money out of funds which he had on deposit, subject to check in the bank at Sullivan, it was an assignment *pro tanto* to Staninger. Munn v. Burch et al., 25 Ill. 35; Bickford v. First National Bank of Chicago, 42 Ill. 241; Brown v. Leckie, 43 Ill. 500; Ridgely Bank v. Patton & Hamilton, 109 Ill. 485; Met. Nat. Bank of Chicago v. Jones et al., 137 Ill. 642; Bank of Antigo v. Union Trust Co., 149 Ill. 352. If the check was to cover a loss on a deal made with Staninger at Mattoon, then the loss not only occurred in Coles county but was paid in that county.

For the errors indicated, the judgment will be reversed and the cause remanded for another trial.