### E. G. Scales v. The State.

#### No. 2772.   Decided June 22. 1904.

**1.—Indictment—Allegation of Sale Not Necessary.**

An indictment under article 377, Penal Code, defining the offense of selling cotton futures, need not allege an actual sale. Following Fullerton v. State, 75 S. W. Rep., 531. Overruling Goldstein v. State, 36 Texas Crim. Rep., 193. Cothran v. State, Id., 196.

**2.—Same—Separate Offenses on Different Days.**

An indictment for the violation of article 377, Penal Code, of selling cotton futures, which attempts to allege a separate offense for each day such business is carried on, and which does not set out in distinct counts the separate days upon which each offense occurred, but attempts to charge a separate offense for each day in one count, is bad.

**3.—Same—Court Could Not Confine Offense to One Day.**

An indictment which is bad in not setting out in distinct counts the different dates upon which the offenses occurred, but combined them in one count, is not cured by the court confining the prosecution to one day.

**4.—Evidence—Actual Delivery—Charters of Cotton Exchanges.**

On a trial for a violation of article 377, Penal Code, it was error to exclude the charters of the cotton exchanges with whom defendant transacted his business, to show that no one belonging to such exchanges was permitted to make a sale of cotton unless an actual delivery was contemplated; and. the same principle applies to the rules and regulations of such exchanges.

**5.—Charges of the Court—Bona Fide Delivery.**

On a trial of a violation of article 377, Penal Code, the court should have given defendant's special instruction to the effect that he did not carry on the business in which future contracts for cotton were bought or sold with no

intention of an actual bona fide delivery of cotton, the evidence supporting such charge.

**6.—Same—Sales or Purchases Outside of State.**

On a trial of a violation of article 377, Penal Code, the court should have given defendant's special instruction to the effect that what was done by him was not conducting a business for the sale of cotton in Texas, but that he simply acted as agent of parties desiring to sell or purchase cotton, and that the sales or purchases were made and consummated outside of the limits of the State of Texas, the evidence showing such to be the case.

**7.—Selling or Buying Cotton Futures—Extraterritorial.**

In order to be guilty of the offense defined under article 377, Penal Code, it requires that the accused must conduct or carry on a business where future contracts are bought and sold in this State, and where the evidence showed that defendant received offers for the sale and purchase of cotton and conveyed these propositions to parties outside of the State of Texas, where they were accepted and the sale or purchase was made there, he was not guilty of any violation of the law.

**8.—Same—Actual Deliveries Not Contemplated.**

Where the evidence of the State fails to show any sale of cotton to be delivered in future, in which an actual delivery was not contemplated and that both seller and purchaser so understood the agreement, the prosecution under article 377, Penal Code, fails.

**9.—Same—Wager Necessary.**

In order to convict under article 377, Penal Code, the State must show that the transaction charged against defendant was a wagering contract.

Appeal from the County Court of Williamson. Tried below before Hon. Chas. A. Wilcox.

Appeal from a conviction of selling cotton futures under article 377, Penal Code; penalty, a fine of $250 and thirty days confinement in the county jail.

The following portion of the indictment is taken from appellant's brief as correct:

The charging part of the indictment is in words and figures as follows, to wit: "That E. G. Scales, composing one of the members of the company of E. G. Scales & Co., whose other names that composed said company are unknown to the grand jury, after making diligent inquiry in said county and State, on the 1st day of July, A. D. 1902, and before the presentment of this indictment, did then and there unlawfully and on each succeeding day thereafter till the 1st day of July, A. D. 1903, conduct, carry on, and transact a business commonly known as dealing in futures in cotton, grain, lard, meats, agricultural products and corporation stocks, and did then and there unlawfully keep a house, and manage, conduct, carry on, and transact a business commonly known as a produce and stock exchange, and as a bucket shop, where future contracts were then and there bought and sold, with no intention of an actual bona fide delivery of the articles and things so bought and sold, against the peace and dignity of the State."

The facts are sufficiently stated in the opinion of the court.

*Hogg, Robertson & Hogg,* for appellant.—The time and place of the alleged offense is not definitely stated as required by law.

The said indictment is duplicitous and insufficient in that it charges

in one and the same count three hundred and sixty-five different and distinct offenses, and is so wanting in certainty that any judgment rendered thereon could not be pleaded in bar of another prosecution.

The court erred in overruling defendant's motion to quash the indictment herein, because it is not charged in the indictment that the defendant as a dealer in futures ever sold a contract in futures in cotton or other product to any person, and therefore the indictment is insufficient. Penal Code, art. 377; Code Crim. Proc. art. 441; Eubanks v. State, 41 Texas, 291; Coleman v. State, 62 S. W. Rep., 753; Barnes v. State, 42 Texas Crim. Rep., 297; State v. Hansen, 23 Texas, 233; Phillips v. State, 29 Texas, 226; Alexander v. State, 29 Texas, 495; Hewitt v. State, 25 Texas, 722; Huntsman v. State, 12 Texas Crim. App., 619; Rose v. State, 1 Texas Crim. App., 400; Connell v. State, 2 Texas Crim. App., 422; Runnells v. State, 34 Texas Crim. Rep., 431. In addition to the above see authorities cited in Judge White's note under art. 441, Code Crim. Proc., page 257, sec. 347.

The court erred in permitting the county attorney to prove by the State's witnesses that defendant conducted the business described continuously every day from the first day of July, 1902, to the first day of July, 1903; and in permitting said witnesses to testify that they each, on many different days during said period, had given defendant orders to purchase or sell cotton, at prices stated, for them on the Cotton Exchange in New Orleans or on the Cotton Exchange in New York for future delivery, which orders defendant caused to be executed for them, neither of said witnesses identifying any day upon which such transactions were had and it not appearing that any one of them was testifying to transactions had upon the same day testified about by any other one of the said witnesses.

The court erred in excluding and refusing to permit the defendant to introduce in evidence the certified copy of the special law of the State of New York, granting the charter to the New York Cotton Exchange and the rules and by-laws of the New York Cotton Exchange adopted in pursuance of the power conferred by said charter authorizing the sale of contracts for the future delivery of cotton on said exchange and governing and controlling the sale of such contracts, and prohibiting the sale of any contract with no intention of an actual delivery of the cotton, because the State had proved by every witness testifying in the case that in conducting the business under investigation and claimed to be in violation of law, the defendant as agent for the witnesses and other parties simply took orders for the purchase or sale for them of such contracts, all of which orders were to be executed and which were in fact executed on said cotton exchange, and that all orders given and all transactions made through defendant were given and made with the express understanding by the parties thereto that such transactions and business should be made in accordance with and governed by the rules and regulations of said cotton exchange, and that in conducting his business all transactions made by defendant were made with this un-

derstanding and agreement; therefore the said charter, rules and by-laws became and were a part of the contracts and were admissible in evidence to show the character of said business and to show that the business as conducted by defendant was lawful, and did not violate the statutes of this State prohibiting dealing in futures with no intention of actual delivery.

The court erred in excluding and refusing to permit the defendant to introduce in evidence the certified copy of the special law of the State of Louisiana granting the charter to the New Orleans Cotton Exchange, and the rules and by-laws of the New Orleans Cotton Exchange adopted in pursuance of the power conferred by said charter authorizing the sale of contracts for the future delivery of cotton on said exchange and governing and controlling the sale of such contracts, and prohibiting the sale of any contract with no intention of an actual delivery of the cotton, because the State had proved by every witness testifying in the case that in conducting the business under investigation and claimed to be in violation of law, the defendant as agent for the witnesses and other parties simply took orders for the purchase or sale for them of such contracts, all of which orders were to be executed and which were in fact executed on said cotton exchange and that all orders given and all transactions made through defendant were given and made with the express understanding by the parties thereto that such transactions and business should be made in accordance with and governed by the rules and regulations of said cotton exchange, and that in conducting his business all transactions made by defendant were made with this understanding and agreement; therefore the said charter, rules and by-laws became and were a part of the contracts and were admissible in evidence to show the character of said business and to show that the business as conducted by defendant was lawful, and did not violate the statutes of this State prohibiting dealing in futures with no intention of actual delivery. White's Code Crim. Proc., art. 791; Greene v. State, 17 Texas Crim. App., 395; Epson v. State, 29 Texas Crim. App., 607; Rogers v. State, 26 Texas Crim. App., 404; Bibb v. Allen, 149 U. S., 481; Hansen v. Boyd, 161 U. S., 397; Clews v. Jamison, 182 U. S., 461; Peabody v. Speyers, 56 N. Y., 230; Bartlett v. Collins, 85 N. W. Rep., 703.

To show a violation of article 377 of the Penal Code and sustain a conviction in this case, it was necessary for the State to prove that at defendant's place of business and in the conduct thereof at Taylor, in Williamson County, future contracts were there bought and sold; and there being no evidence in the case showing or tending to show that future contracts were bought and sold in his business or at his place of business in Williamson County, the court erred in refusing to direct the jury to return a verdict of not guilty; and there being no such evidence in the case the court erred in overruling defendant's motion for new trial, because the verdict of the jury and judgment rendered thereon were not supported by the evidence. Penal Code, art. 377;

Gen. Laws 1899, p. 58; Windsor v. State, 9 Texas Ct. Rep., 900; Rich v. State, 38 Texas Crim. Rep., 199; Ryan v. M. K. & T. Ry. Co., 65 Texas, 13; Seiders v. Life Assn., etc., 93 Texas, 194.

To authorize a conviction in this case it was necessary for the State to have shown that in the business conducted by defendant contracts for futures in cotton were bought and sold with no intention of actual bona fide delivery, that is, that at the time of the purchase or sale neither party to such contracts intended that there should be a delivery of the cotton contracted for; and there being no evidence in the case proving or tending to prove that in the contracts testified about both of the parties to the contract did not intend actual delivery of the cotton according to their terms, the court erred in refusing to direct a verdict of acquittal; and the verdict and judgment not being supported by the evidence, the court erred in refusing to grant a new trial. Oliphant v. Markham, 79 Texas, 543; 14 Am. and Eng. Enc. of Law, 2 ed., pp. 610, 611; Irwin v. Williar, 110 U. S., 499; Bibb v. Allen, 149 U. S., 481; Clews v. Jamison, 182 U. S., 461; Gregory v. Wendell, 40 Mich., 432; Connor & Hare v. Robertson, 37 La. Ann., 814; Rumsey v. Berry, 65 Me., 570; McCarty v. Ware Com. Co., 91 N. W. Rep., 33; Staninger v. Tabor, 103 Ill. App., 330; Jones v. Jones, 103 Ill. App., 382; Clay v. Allen, 63 Miss., 426; Wall v. Schneider, 59 Wis., 352; Johnson v. Miller, 53 S. W. Rep., 1052; Gaylord v. Duryea, 69 S. W. Rep., 607; Drouilhet v. Pinckard, 42 S. W. Rep., 135; Heidenheimer v. Cleveland, 17 S. W. Rep., 524; Seeligson v. Lewis & Williams, 65 Texas, 215; Floyd v. Patterson, 72 Texas, 202; Bartlett v. Smith, 13 Fed. Rep., 263; Kirkpatrick v. Adams, 20 Fed. Rep., 287; Bangs v. Honrick, 30 Fed. Rep., 97; Lehman v. Fields, 37 Fed. Rep., 852; Boyd v. Hanson, 41 Fed. Rep., 174; Sampson v. Caperdown Mills, 82 Fed. Rep., 873; Hill v. Levy, 98 Fed. Rep., 94; Ponder v. Gerome Hill Cotton Co., 100 Fed. Rep., 373; Hentz v. Jewell, 20 Fed., Rep., 592.

The court erred in overruling defendant's motion and refusing him a new trial, because under the undisputed evidence in the case the business conducted by defendant was interstate commerce and defendant could not be punished under the statutes of this State for conducting such business; said statutes being in conflict with the Constitution and laws of the United States, were void in so far as they attempted to regulate interstate commerce. Constitution United States, sec. 8; Brennan v. City of Tuttsville, 153 U. S., 289; Western U. Tel. Co. v. Texas, 105 U. S., 460; Western U. Tel. Co. v. Mass., 125 U. S., 530; Le Loup v. Port of Mobile, 127 U. S., 640; Leisy v. Hardin, 135 U. S., 100; Lyng v. Michigan, 135 U. S., 161; United States v. Knight Co., 156 U. S., 1; In re Bergen, 115 Fed. Rep., 339; Sawnie v. Tennison, 82 Fed. Rep., 615; Vance v. Vandercoop, 170 U. S., 438.

*Howard Martin*, Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—Appellant was convicted of selling cotton

futures, under article 377, Penal Code, and his punishment assessed at a fine of $250 and thirty days imprisonment in the county jail; hence this appeal.

Appellant made a motion to quash the indictment, on the ground that it failed to allege a sale to any person. This indictment, under the former holdings of this court, would appear to be in the respect mentined, vicious. Goldstein v. State, 36 Texas Crim. Rep., 193; Cothran v. State, 36 Texas Crim. Rep., 196. However, those cases on this question have been overruled in Fullerton v. State, 75 S. W. Rep., 534. In accordance with that decision it is no longer necessary to allege an actual sale.

Motion was also made to quash the indictment because it alleged more than one offense. The language of the indictment in this respect is as follows: that appellant "on the first of July, 1902, did then and there unlawfully, and on each succeeding day thereafter, until the first of July, 1903, conduct, carry on and transact a business, commonly known as dealing in futures in cotton," etc. The contention is that the statute makes the carrying on of said business an offense for each day it is carried one. The language of the statute in this respect being, "provided, that each day such business is carried on or kept shall constitute a separate offense." Under the decisions of some of the States and in the United States Court it is allowable in the prosecution of misdemeanors to set out a number of misdemeanors in separate counts in the same indictment, and to convict on each or as many as may be proven. And this seems to be the doctrine in this State. Hall v. State, 32 Texas Crim. Rep., 474. In this indictment, the separate days are not set out in distinct counts, but it seems that the attempt was here made to charge a separate offense for each day in one count. We believe that the separate occasions should be set out in distinct counts, and the dates and proof should correspond with some degree of particularity, so that in case of conviction or acquittal, appellant might be secure in his right against being placed in jeopardy again for the same offense. In our opinion the indictment is vicious in the respect pointed out. And being so it was not cured by the court confining the prosecution to one day.

Appellant complains that the court erred in refusing to permit him to introduce the charters of the New Orleans and New York exchanges, being those through which appellant dealt in the purchase and sale of cotton, showing that under the charter of these corporations, no one belonging to such exchanges was permitted to make a sale of cotton, etc., unless an actual delivery was contemplated. We find in the record a good deal of parol proof of this sort, but the court in the trial of the case appears to have ignored this. We think the proof which was excluded should have been admitted. The exchanges, as above stated, were corporations, and could only act in accordance with the provisions of their charter. These provisions indicate not only their power, but method of doing business. The admission of this testimony,

of course, would not bind the State, if it was able to show otherwise that appellant through his agents did make sales of cotton futures, the delivery of which was not contemplated by the parties. But in the absence of such proof, a sale through a corporation would be presumed to be in accordance with the power and method prescribed in the charter of the corporation. What we have said with reference to the charters also applies to the rules and regulations adopted by said exchanges.

Appellant contends that the court should have given the special requested instructions asked by him. These instructions raise, in effect, two questions: First, that appellant did not deal in futures—that is, carry on a business in which future contracts for cotton were bought or sold with no intention of an actual bona fide delivery of said cotton. Second, that what was done by him, was not conducting a business for the sale of cotton at Taylor, in Williamson County, but he simply acted as an agent for the parties desiring to sell or purchase cotton, and that the sale was made and consummated in New Orleans or New York, as the case might be. Appellant strenuously insists that the facts presented in the record, and almost without controversy, required the court to give his requested instructions on these subjects. We have examined the record carefully in that respect, and we find appellant's mode of doing business as follows: That a person desiring to purchase cotton for future delivery would come to appellant's office in the city of Taylor, and make request to purchase say 100 bales of cotton in the city of New Orleans, for delivery at a future day at a stated price; that he would take the offer and telegraph to some member of the Cotton Exchange in New Orleans, and that this broker in New Orleans to whom the order was telegraphed would take the same and go upon the exchange in New Orleans and make the offer to buy the number of bales covered in the order at the prices mentioned therein, and for delivery at the time mentioned in the order; and if the offer was accepted by any one on the exchange, then the contract would be closed, the broker acting under the instruction sent him by appellant. When the contract was so made the broker to whom the order had been telegraphed in New Orleans would telegraph the acceptance of the same to the firm of Scales & Co. at Taylor, that the order had been executed and the contract made for the delivery of the cotton. On receipt of this, notification was given to the purchaser at Taylor by appellant; and thereupon said purchaser would pay to the firm of Scales & Co., at Taylor, the sum of $2 per bale, called "margin" to cover fluctuations in the market price of the cotton; that on every 100 bales of cotton so purchased a commission of $10 was charged by appellant; $5 of which he retained, and the other $5 he sent to the broker employed by him in New Orleans. On the payment of this money by the purchaser upon the transaction, the firm of Scales & Co., who at all times kept money to their credit with the broker through whom they dealt at New Orleans, would telegraph to the New Orleans broker

that the margin of $2 per bale had been paid to them, and to charge their account with said sum; that if at any time the purchaseer desired his cotton to be sold Scales & Co. would telegraph the broker in New Orleans, who would go upon the exchange and sell the contract, if he could do so, at the price stated. That all of such transactions were real and not fictitious, and that the broker would make the sale if he could. If consummated he would telegraph back to Scales & Co. that he had sold the contract, and the price for which the sale was made, and would notify Scales & Co. that they were credited with the profits, if any had accrued; or if there was a loss, charged with the loss. Thereupon Scales & Co. would make a settlement at once with the party at Taylor according to the report of the transaction had in New Orleans. In cases where the contracts were made and the money deposited with Scales & Co. for the purchase of cotton, the money was transmitted to New Orleans by telegraph, and there deposited to cover the contract for the party making the same, and all money received at New Orleans on account of profits made on such transactions were telegraphed to Taylor and there paid by Scales to the party to whom it belonged. That Scales & Co. did not receive any part of the money put us as margin, except the commission of $5 on every 100 bales of cotton bought or sold; nor did they retain any part of the money when the contract was closed out at New Orleans or New York, but the whole of the same was paid to the person who was the owner of the contract which had been sold. It is further stated that all these transactions in New Orleans were with the Cotton Exchange, and the names of the parties with whom he dealt are given; and that all such transactions were real and not fictitious; that they were all made and agreed to be made, and to be governed by the rules and by-laws of said exchange where they were to be executed; and that in their making the understanding was that the rules of the said exchange were that all cotton should be actually delivered upon the contracts in accordance with the terms of the contract, and all persons were prohibited from making a contract on either of said exchanges in New York or New Orleans relating to the future delivery of cotton which did not contemplate actual and bona fide delivery thereof. That witness had never been informed by any one, nor did he ever know that it was the intention or purpose of any person making the transaction through the exchange or brokerage business of E. G. Scales & Co. that they did not intend, if they kept their contracts until their maturity, not to accept cotton bought or actually delivered that sold in accordance with the terms of the contract. That said firm never did at any time in conducting their business at Taylor, in Williamson County, sell any contract or contracts for the future delivery of cotton or grain or produce or meats, etc., and never did in their business at said point buy from any person any future contract for any such articles, or delivery thereof; that their only business was that of brokers, and that all they

did was to accept orders from persons who wished to buy cotton and telegraph such orders to the different exchanges where the persons desired to have the orders executed and have them there executed through brokers as hereinbefore explaned.

This is a substantial statement of appellant's business as testified to by him, but we do not understand it to materially vary in any respect from the testimony given by the State's witnesses.

As stated, appellant contends that this was not a sale at all by him in the State of Texas, but he acted merely as the agent of the buyer or purchaser, as the case might be, and the sale was actually consummated through another agent in New Orleans; that what he did was simply to convey the offer to sell or buy to the agent at New Orleans, and the transaction was closed by him. We believe this contention is correct, and under our statute it requires in terms that the person, in order to be guilty of the offense defined, must conduct or carry on a business where future contracts are *bought* and *sold.* Under the authorities, as we understand them, the facts here stated do not show that appellant either bought or sold cotton in the city of Taylor, Williamson County. True, his business was to receive offers for the sale and purchase of cotton. He conveyed these propositions to parties in New Orleans; there the proposition was accepted, the minds of the parties met, and the sale or purchase was made. This we understand to be the doctrine enunciated by the current of authorities. Sinclair v. State, 8 Texas Ct. Rep., 791, 45 Texas Crim. Rep., 487; Windsor v. State, 9 Texas Ct. Rep., 900; Rich v. State, 38 Texas Crim. Rep., 99; Ryan v. M. K. & T. Ry. Co., 65 Texas, 13; Seiders v. Life Assn., 93 Texas, 199; Lascallet v. Commonwealth, 17 S. E. Rep., 546 (Va.); Garbracht v. Commonwealth, 96 Pa. St., 449; Minn. Oil Co. v. Collier Lead Co., 4 Dillon C. C., 431; State v. Hughes, 22 West Va., 743; State v. Gritzner, 134 Mo., 512, 36 S. W. Rep., 39.

It further occurs to us that the other proposition of appellant is well taken; that is, the evidence for the State fails to show any sale of cotton to be delivered in the future, in which an actual delivery was not contemplated. We understand the authorities to teach that it is not alone sufficient that one of the parties to the contract contemplates that there will be no delivery of the thing sold, but that both must so understand the agreement. In this respect the burden is on the State to show, before either of the parties to the contract can be convicted, that both parties engaged in a wagering contract. Irwin v. Williar, 110 U. S., 499; Bibb v. Allen, 149 U. S., 481; Clews v. Jamison, 182 U. S., 461; Gregory v. Wendell, 40 Mich., 432; Connor & Hare v. Robertson, 37 La. Ann., 814; Ramsey v. Berry, 65 Maine, 576; McCarty v. Ware Com. Co. (Minn.), 91 N. W. Rep., 33; Staniger v. Tabor, 103 Ill. App., 330; Jones v. Jones, 103 Ill. App., 382; Clay v. Allen, 63 Miss., 426; Wells v. Schneider, 59 Wis., 352; Johnson v. Miller (Ark.), 53 S. W. Rep., 1052; Gaylard v. Duryea, 69 S.

W. Rep., 670 (Mo.) ; and we might cite a number of cases in appellant's brief to the same effect. And on the same subject see Oliphant v. Markham, 79 Texas, 547. In Fullerton v. State, 75 S. W. Rep., 534, the facts constituting the transactions were not as here presented. In the case at bar, so far as the proof is concerned, the State failed to show that the transaction charged against appellant was a wagering contract. Appellant on the other hand assumed the burden and showed that, under the rules of law as laid down by the authorities, what he did, if he could be held to have consummated the contract in Taylor, was not a wagering contract; that is, that the parties in fact intended an actual delivery of the cotton. It may be that the modus operandi here pursued is an evasion of the spirit of the statute in question, but certainly the proof does not establish a violation of the letter of our law on the subject. We accordingly hold that the court should have given the requested instructions, or rather should have given an instruction to the jury to find appellant not guilty. But, as before stated, in our opinion the indictment is bad and should have been quashed; and the judgment is accordingly reversed and the prosecution ordered dismissed.

*Reversed and dismissed.*