# Illinois Official Reports

## Appellate Court

---

### *Dew-Becker v. Wu*, 2018 IL App (1st) 171675

---

| | |
|---|---|
| Appellate Court Caption | COLIN DEW-BECKER, Plaintiff-Appellant, v. ANDREW WU, Defendant-Appellee. |
| District & No. | First District, Sixth Division<br>Docket No. 1-17-1675 |
| Filed | December 14, 2018 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 16-M1-011598; the Hon. Leon Wool, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Burton N. Ring and Stuart M. Clarke, of Burton N. Ring, P.C., of Chicago, for appellant.<br><br>No brief filed for appellee. |
| Panel | JUSTICE CONNORS delivered the judgment of the court, with opinion.<br>Justices Cunningham and Harris concurred in the judgment and opinion. |

**OPINION**

¶ 1    Plaintiff, Colin Dew-Becker, appeals the trial court's decision in favor of defendant, Andrew Wu, after a bench trial. Plaintiff argues that in reaching its decision, the trial court erroneously interpreted section 28-8 of the Criminal Code of 2012 (hereinafter the Illinois Loss Recovery Act[1] or Act) (720 ILCS 5/28-8 (West 2014)), which provides a cause of action for damages to the loser of certain illegal bets against the winner of the bets. The trial court determined that this section of the Act does not allow recovery when the gambling is conducted through a third-party website, such as FanDuel, rather than a wager directly between one person and another. We agree with the trial court's interpretation of the Act and affirm its decision.

¶ 2                                    BACKGROUND

¶ 3    This case stems from a bet placed between plaintiff and defendant through the fantasy sports website FanDuel. On April 4, 2016, plaintiff brought a small claims action against defendant after plaintiff lost $100 as a result of a wager with defendant that was placed three days earlier on April 1, 2016. Plaintiff's complaint alleged that he and defendant engaged in a head-to-head daily fantasy sports (DFS) contest through FanDuel's website, with plaintiff and defendant each wagering $100 on the outcome of their contest for the opportunity to win $100 from the other. Plaintiff further alleged that the wager was an act of gambling and that he and defendant each paid $109 to FanDuel, for a total of $218. FanDuel received $18 as a fee and the total prize for the DFS contest was $200. Plaintiff and defendant selected their DFS roster by each choosing nine National Basketball Association (NBA) players. At the conclusion of the contest, plaintiff, who played under the name "dewbeckc," scored 96.3 points, and defendant, who played under the name "questionablylegal," scored 221.1. Six of the nine players selected by plaintiff scored a "0" for that day's contest. As a result of scoring the highest total points, defendant won the $200 prize. Plaintiff's complaint sought relief pursuant to the Illinois Loss Recovery Act, which allows "[a]ny person who by gambling shall lose to any other person, any sum of money or thing of value, amounting to the sum of $50 or more" to "sue for and recover the money or other thing of value *** in a civil action against the winner thereof, with costs, in the circuit court." *Id.* § 28-8(a).

¶ 4    On May 4, 2016, the matter proceeded to trial, where judgment was entered in favor of defendant. Plaintiff appealed. On appeal, we reversed and remanded for a new trial, finding that plaintiff was never provided an opportunity to be heard because he was "not afforded the chance to present testimony or argument." *Dew-Becker v. Wu*, 2017 IL App (1st) 161383-U, ¶ 14.

---

[1]We note that section 28-8 of the Criminal Code of 2012 does not carry a short title. Additionally, no Illinois state court case has ever referred to this section as the "Illinois Loss Recovery Act." However, we opt to refer to this section as the "Illinois Loss Recovery Act" to remain consistent with the federal cases that have examined this statute. See, *e.g.*, *Sonnenberg v. Amaya Group Holdings (IOM) Ltd.*, 810 F.3d 509, 510 (7th Cir. 2016); *Phillips v. Double Down Interactive LLC*, 173 F. Supp. 3d 731, 737 (N.D. Ill. 2016); *Langone v. Kaiser*, No. 12 C 2073, 2013 WL 5567587, at *3 (N.D. Ill. Oct. 9, 2013).

¶ 5    On June 26, 2017, after remand, this matter proceeded to trial, at which both sides were able to present testimony and evidence. Plaintiff was represented by counsel and defendant proceeded *pro se*. A transcript of the trial is included in the record on appeal.

¶ 6    Plaintiff testified that on April 1, 2016, he entered a head-to-head DFS contest with defendant. Plaintiff testified that he chose the NBA players for his team "hoping that they would score the most possible points for my team." Plaintiff stated that he did not win the contest with defendant because his team scored 96.3 points and defendant's team scored 221.1 points. Plaintiff had wagered $100, with the hope of winning $200. Plaintiff noted that FanDuel collected a $9 fee from each player. Additionally, plaintiff testified that there were elements of the game that were completely out of one's control, such as player injury or weather, and analogized a DFS contest to betting on a horse in a horse race.

¶ 7    On cross-examination, when plaintiff was asked whether he considered FanDuel a contest of skill, he responded, "I certainly think there's skill involved. I think both skill and luck are components of this for sure."

¶ 8    Defendant testified that although plaintiff sued him directly in this case, FanDuel was actually the mediator of their wager, and thus it was impossible to truly participate in a head-to-head wager. Defendant stated that because two strangers could wager with one another through FanDuel, he did not believe the Act applied. Defendant testified that the contest at issue was "not an illegal gambling situation" and that the Act was not meant to apply.

¶ 9    In closing arguments, counsel for plaintiff asserted that he had established that the contest at issue was a wager within the meaning of the Act because there was no exemption for DFS or fantasy sports of any kind. Counsel concluded by stating, "This is the age of the Internet. If the legislature had intended to draft carve-outs, they could have done so at any time, particularly given how recently the Criminal Code has been amended." In his closing, defendant argued that the idea that one can be sued for using a website that millions of people use "appears to be an overreach of the intention of this law." Defendant stated that to find that each wager on a site like FanDuel is an illegal wager that can be brought to court is "too broad an interpretation" that would cause a lot of problems.

¶ 10   After trial, the court below found in favor of defendant and delivered the following ruling:

   "Plaintiff brings a civil action against the [d]efendant under 720 ILCS 5/28-8[.] [U]nder section 28-8(a), 'A person who by gambling loses any sum of money totaling $50 or more to any other person may initiate a civil action to recover damages from the winner.'

   The plain meaning of the [s]tatute does not allow recovery when the gambling is not connected—conducted between one person and another person, in this case, because of FanDuel[.] [T]herefore it's the opinion of the [c]ourt the verdict will be in favor of the [d]efendant."

¶ 11   Also on June 26, 2017, plaintiff filed his notice of appeal. On November 13, 2017, plaintiff filed a motion with this court requesting that this appeal be deemed ready. On December 1, 2017, after receiving no response from defendant, we ordered that this appeal proceed on appellant's brief and the record only.

¶ 12                                                 ANALYSIS

¶ 13        On appeal, plaintiff argues that the trial court erroneously interpreted the Act when it determined that FanDuel's facilitation of the wager precluded recovery. Plaintiff contends that the Illinois Loss Recovery Act does not include an exclusion or limitation for cases where the gambling at issue is facilitated by a third party, such as FanDuel. For the reasons that follow, we affirm the trial court's decision.

¶ 14        Although we typically determine whether a trial court's decision after a bench trial was against the manifest weight of the evidence (*Garden View, LLC v. Fletcher*, 394 Ill. App. 3d 577, 583 (2009)), we apply a *de novo* standard where, as here, we are faced with a question of statutory interpretation (*Goldfine v. Barack, Ferrazzano, Kirschbaum & Perlman*, 2014 IL 116362, ¶ 20).

¶ 15        The Illinois Loss Recovery Act provides as follows:

"Gambling losses recoverable.

(a) Any person who by gambling shall lose to any other person, any sum of money or thing of value, amounting to the sum of $50 or more and shall pay or deliver the same or any part thereof, may sue for and recover the money or other thing of value, so lost and paid or delivered, in a civil action against the winner thereof, with costs, in the circuit court. ***.

(b) If within 6 months, such person who under the terms of Subsection 28-8(a) is entitled to initiate action to recover his losses does not in fact pursue his remedy, any person may initiate a civil action against the winner. The court or the jury, as the case may be, shall determine the amount of the loss. After such determination, the court shall enter a judgment of triple the amount so determined.

(c) Gambling losses as a result of gambling conducted on a video gaming terminal licensed under the Video Gaming Act are not recoverable under this Section." 720 ILCS 5/28-8 (West 2014).

¶ 16        Here, plaintiff sued defendant pursuant to the Act. Thus, the first question that we must answer is whether the DFS contest in which plaintiff and defendant participated amounted to "gambling." In Illinois, "[a] person commits gambling when he or she *** knowingly plays a game of chance or skill for money or other thing of value, unless excepted in subsection (b) of this Section." *Id.* § 28-1(a)(1).

¶ 17        We find that the DFS contest at issue was a game of chance, a game of skill, or some combination thereof and that none of the exceptions enumerated in section 28-1(b) apply. See *id.* § 28-1(b). Therefore, we assume *arguendo* that plaintiff's and defendant's participation in the head-to-head DFS contest at issue qualified as gambling. The question next becomes whether the Act allows plaintiff to recover the gambling loss he incurred as a result of a DFS contest facilitated by a third-party website, such as FanDuel. The trial court determined that the Act does not apply to the instant case, and thus plaintiff cannot recover. We agree.

¶ 18        Plaintiff argues that the Act does not contain an express limitation or exclusion for cases where gambling is facilitated through a third-party website, such as FanDuel. "This court's primary objective in interpreting a statute is to ascertain and give effect to the intent of the legislature. [Citation.] The most reliable indication of the legislature's intent is the language of the statute, given its plain and ordinary meaning." *Goldfine*, 2014 IL 116362, ¶ 21. Further, it is well settled that when interpreting a statute, "we will avoid a construction that would defeat

- 4 -

the statute's purpose or yield absurd or unjust results." *Bowman v. Ottney*, 2015 IL 119000, ¶ 17.

¶ 19 The trial court determined that the Act was not intended to apply here because the gambling at issue was not conducted directly between one person and another person and instead was conducted through FanDuel, a third-party intermediary. We find support for the trial court's ruling in the plain, unambiguous language of the statute. Section 28-8(a) references "[a]ny person who by gambling shall lose to any other person." 720 ILCS 5/28-8(a) (West 2014). We find that this language requires a direct connection between the two persons involved in the wager. The statute specifically refers to "[a]ny person" who loses "to any other person." *Id.* There is no indication that gambling committed between two persons through the use of a third-party website, such as FanDuel, was intended to be covered by the Act.

¶ 20 Additionally, allowing DFS contests on FanDuel to be covered by the Act would be problematic because people who do not necessarily know one another can compete head-to-head on the site. In this case, plaintiff and defendant presumably knew one another prior to entering into the DFS contest. We presume such a fact because there is no evidence in the record that their DFS contest was based on a random opponent assignment. Plaintiff made no allegation in his complaint regarding how he ascertained defendant's identity, and there is no indication that plaintiff and defendant were strangers. Although plaintiff and defendant knew one another in this case, FanDuel does not require all contestants in head-to-head DFS contests to know one another. A head-to-head DFS contest can be conducted between two strangers. In fact, plaintiff recognized this in his complaint and alleged, "The individual who initiates the head-to-head contest chooses (and pays) the size of the entrance fee for the contest, and can then either invite a friend to enter the contest, or can allow the contest to be entered by any other individual on the site."

¶ 21 In this case, plaintiff competed under the screen name "dewbeckc" and defendant competed under the screen name "questionablylegal." If plaintiff and defendant did not know one another prior to entering the DFS contest, then it would have been difficult, if not impossible, for plaintiff to discern defendant's identity beyond his screen name, which would have impeded the filing of an action in circuit court, *i.e.*, the crux of recovery under the Act. Certainly, the loser of a wager cannot sue the winner to recover under the Act when the winner's identity is known only through a screen name. As a result, we find that the Act was not intended to apply to gambling facilitated by a third-party website, such as FanDuel, which allows a person to engage in head-to-head DFS contests with a stranger. Instead, the Act was intended to apply to allow recovery when two people who know one another (or at least are familiar with one another's identity) engage in illegal gambling.

¶ 22 Further, to construe the Act in a manner that would allow plaintiff to recover would frustrate the statute's purpose and yield absurd results. Simply put, the floodgates of litigation would be opened to the thousands of Illinois residents who engage in DFS contests. If we adopted plaintiff's interpretation of the Act, then any person who lost more than $50 on a DFS website such as FanDuel would be able to bring a small claims action in circuit court. It is absurd to believe that the Act's drafters intended to inundate the court system with such a high volume of claims.

¶ 23 Plaintiff cites numerous federal court decisions as support for his contention that he should be allowed to recover under the Act. For example, plaintiff cites *Langone*, 2013 WL 5567587, at *6, wherein the court determined that FanDuel was not a "winner" within the meaning of the

Illinois Loss Recovery Act and could not be sued under the Act because FanDuel "risks nothing when it takes entry fees from participants in its fantasy sports games." Here, plaintiff has not sued FanDuel, and thus *Langone* is not instructive. Additionally, this case involves the interpretation of an Illinois statute, and federal case law is not binding. *Combs v. Insurance Co. of Illinois*, 146 Ill. App. 3d 957, 962 (1986) (recognizing that "decisions by the [f]ederal courts, other than the United States Supreme Court, as to the law of Illinois are not binding on state courts").

¶ 24 Plaintiff has not cited, and we have not found, any Illinois case that allowed the loser of a DFS contest conducted through FanDuel (or a similar third-party website) to recover from the winner pursuant to the Illinois Loss Recovery Act. In fact, there are very few cases decided by Illinois courts in which the Illinois Loss Recovery Act has been examined. Since 1950, only two Illinois state court cases have addressed the Act. See *Reuter v. MasterCard International, Inc.*, 397 Ill. App. 3d 915 (2010) (holding that plaintiff could not recover from the defendant credit card companies because although the plaintiff's credit card was used to gamble on Internet casinos, credit card companies were not "winners" under the Act); *Moushon v. AAA Amusement, Inc.*, 267 Ill. App. 3d 187 (1994) (determining that the Act's distinction between different types of gambling did not violate the defendants' equal protection rights). Neither of these cases addressed a factual scenario similar to the one at bar or include analysis relevant here.

¶ 25 We believe that the dearth of decisions within the past six decades that analyze the Act indicate that its relevance and applicability have dwindled since its inception in the late 1800s. Likely, this is due to the expansion of legalized forms of gambling and, specifically, sports gambling. The general expansion of legalized gambling is reflected in section 28-1(b) of the Criminal Code of 2012, which provides that participants in activities such as bingo, lotteries, raffles, pull tabs and jar games, gambling conducted on riverboats, and video gaming terminal games, "shall not be convicted of gambling." 720 ILCS 5/28-1(b) (West 2014). Further evidence of the trend toward limiting who may recover under the Illinois Loss Recovery Act is included in section 28-8(c) of the Act, which was added in connection with the enactment of the Video Gaming Act (230 ILCS 40/1 *et seq.* (West 2014)), and provides, "Gambling losses as a result of gambling conducted on a video gaming terminal licensed under the Video Gaming Act are not recoverable under this Section." 720 ILCS 5/28-8(c) (West 2014).

¶ 26 As a final matter, we note that the catalyst for the expansion of legalized sports gambling was the United States Supreme Court's recent holding in *Murphy v. National Collegiate Athletic Ass'n*, 584 U.S. ___, 138 S. Ct. 1461 (2018), that a federal statute, that included a provision that made it illegal for any state to authorize sports gambling, violated the anticommandeering doctrine. However, even prior to that decision, the Seventh Circuit Court of Appeals specifically recognized that the Illinois Loss Recovery Act "dates from an era of strong opposition in Illinois to gambling" but recognized "[t]hat era has ended, and the laws are gradually being relaxed." *Sonnenberg v. Amaya Group Holdings (IOM) Ltd.*, 810 F.3d 509, 510 (7th Cir. 2016). At this time, there are a number of bills before the Illinois legislature that propose the legalization and regulation of sports gambling. It is, therefore, apparent that the trend in Illinois is toward more relaxed gambling laws, not stricter ones. As such, we decline to interpret the Illinois Loss Recovery Act in a manner that would frustrate its purpose and yield an absurd result, and affirm the trial court's decision in favor of defendant.

## CONCLUSION

¶ 28    Based on the foregoing, we find that the trial court properly found in defendant's favor and affirm its decision.

¶ 29    Affirmed.