# Illinois Official Reports

## Appellate Court

---

### *Lawson v. Iaderosa*, 2020 IL App (3d) 180609

---

| | |
|---|---|
| Appellate Court Caption | SANDRA LAWSON and JOHN WEBB, Plaintiffs, v. ANTHONY IADEROSA JR.; JENNIFER HELSEL IADEROSA; ANTHONY IADEROSA SR.; FRED SYLVESTER; KARA NOBLE; ADVANCED INVENTORY MANAGEMENT, INC.; SILEX CAPITAL, LP; TRIDENT HOLDINGS, LLC; LAKESIDE BANK; and UNKNOWN DEFENDANT JOHN DOE, Defendants (Sandra Lawson, Plaintiff-Appellant; Anthony Iaderosa Jr., Jennifer Helsel Iaderosa, Anthony Iaderosa Sr., Fred Sylvester, Kara Noble, Advanced Inventory Management, Inc., Silex Capital, LP, and Trident Holdings, LLC, Defendants-Appellees). |
| District & No. | Third District No. 3-18-0609 |
| Filed Rehearing denied | February 14, 2020 March 19, 2020 |
| Decision Under Review | Appeal from the Circuit Court of Will County, No. 17-L-0224; the Hon. Raymond E. Rossi, Judge, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | Michael W. Huseman, of Dreyer, Foote, Streit, Furgason & Slocum, of Aurora, for appellant. |

Anthony L. Schumann, of Quintairos, Prieto, Wood & Boyer, P.A., and Michael B. Cohen, of Edwards Maxon Mago & Macaulay, LLP, both of Chicago, for appellees.

Panel          JUSTICE O'BRIEN delivered the judgment of the court, with opinion. Justices McDade and Wright concurred in the judgment and opinion.

## OPINION

¶ 1      Sandra Lawson appealed the dismissal of her claims filed under section 28-8 of the Criminal Code of 2012 (hereinafter the Loss Recovery Act)[1] (720 ILCS 5/28-8 (West 2016)) against several defendants to recover the gambling losses of her son.

¶ 2                                FACTS

¶ 3      The plaintiffs, Sandra Lawson and John Webb, filed a complaint on March 17, 2017, in Will County, against the defendants, Anthony Iaderosa Jr., Jennifer Helsel Iaderosa, Anthony Iaderosa Sr., Fred Sylvester, Kara Noble, Advanced Inventory Management, Inc., Silex Capital, LP, Trident Holdings, LLC, Lakeside Bank, and an unknown defendant (the first eight defendants are the appellees and are collectively referred to as the Iaderosa defendants). The second amended complaint alleged that, from approximately 2012 through 2017, Webb placed unlawful wagers on two Internet gambling sites operated by the Iaderosa defendants. Relevant to this appeal, six of the counts were alleged by Lawson against the Iaderosa defendants under the Loss Recovery Act, alleging that Webb was the loser of sports wagers and that the Iaderosa defendants were the winners of the sports wagers.

¶ 4      The Iaderosa defendants filed a motion to dismiss the second amended complaint, arguing that Lawson lacked standing under the Loss Recovery Act because Webb had already filed suit in Florida to recover his alleged gambling losses. The Iaderosa defendants also alleged that Lawson lacked standing because she conspired with Webb to file under the Loss Recovery Act.

¶ 5      Webb had filed a complaint in Florida on April 11, 2016, against all of the same defendants as the Illinois action, except that Lakeside Bank was not named in the Florida action. Webb alleged that the Iaderosa defendants were operating a legal, interstate, pari-mutuel[2] wagering business and that he made deposits in his personal account on the Iaderosa defendants' two websites in the total amount of $646,000, for the purpose of pari-mutuel wagering. Webb alleged that the Iaderosa defendants did not maintain his funds in an escrow account, as

---

[1]Section 28-8 has no official short title, but decisions of the appellate court and federal courts have at times referred to it as the Loss Recovery Act. See *Dew-Becker v. Wu*, 2018 IL App (1st) 171675, ¶ 1 n.1.

[2]In pari-mutuel gambling, competitors who bet on the "first three places share the total amount bet minus a percentage for the management." Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/pari-mutuel (last visited Feb. 13, 2020) [https://perma.cc/NE4T-PQDS].

promised, and never made any bets or wagers. Webb alleged that the Iaderosa defendants ran a Ponzi-like scheme in which they paid winnings out of other customers' deposits. Webb alleged that he won some bets and was due $516,000 that the Iaderosa defendants could not pay. At that time, Webb demanded the return of his deposits in the amount of $646,000, which the Iaderosa defendants did not return. Webb's original complaint in Florida was dismissed for lack of personal jurisdiction, and his amended complaint was dismissed for lack of subject matter jurisdiction. Webb filed a second amended complaint, which he voluntarily dismissed on March 14, 2017.

¶ 6    In granting the Iaderosa defendants' motion to dismiss the instant action, the trial court found that Lawson lacked standing because of Webb's action that he initiated in Florida, between the same parties and concerning the same transactions. The trial court also found that Lawson lacked standing because she conspired with her son to wait to file the instant lawsuit on Webb's behalf. The trial court made a finding that there was no just reason to delay appeal, pursuant to Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016), with respect to Lawson's claims and Lawson appealed.

¶ 7                                    ANALYSIS

¶ 8    Lawson contends that the trial court erred in concluding that Webb's Florida action was an attempt by Webb to recover his gambling losses under the Loss Recovery Act, so it erred in dismissing the instant action on the basis of standing. Lawson argues that the Florida action involved money held by the Iaderosa defendants and allegedly converted by them before it could be wagered but did not involve gambling losses. In addition, Lawson argues that Florida did not have a similar statute to recover for gambling losses, so Webb could not pursue an action in Florida to recover those losses.

¶ 9    The Loss Recovery Act states that gambling losses are recoverable when:

> "(a) Any person who by gambling shall lose to any other person, any sum of money or thing of value, amounting to the sum of $50 or more and shall pay or deliver the same or any part thereof, may sue for and recover the money or other thing of value, so lost and paid or delivered, in a civil action against the winner thereof, with costs, in the circuit court. No person who accepts from another person for transmission, and transmits, either in his own name or in the name of such other person, any order for any transaction to be made upon, or who executes any order given to him by another person, or who executes any transaction for his own account on, any regular board of trade or commercial, commodity or stock exchange, shall, under any circumstances, be deemed a 'winner' of any moneys lost by such other person in or through any such transactions.

> (b) If within 6 months, such person who under the terms of Subsection 28-8(a) is entitled to initiate action to recover his losses does not in fact pursue his remedy, any person may initiate a civil action against the winner. The court or the jury, as the case may be, shall determine the amount of the loss. After such determination, the court shall enter a judgment of triple the amount so determined." 720 ILCS 5/28-8(a), (b) (West 2016).

¶ 10    The Iaderosa defendants filed a motion to dismiss pursuant to section 2-619 of the Code of Civil Procedure (735 ILCS 5/2-619 (West 2016)). A section 2-619 motion is an involuntary dismissal based upon certain defects or defenses. *Id.* The purpose of a section 2-619 motion to dismiss is to dispose of issues of law and easily proved issues of fact at the outset of the

litigation. *United City of Yorkville v. Fidelity & Deposit Co. of Maryland*, 2019 IL App (2d) 180230, ¶ 60. We review the dismissal of a complaint *de novo*. *Id.*

¶ 11 The trial court concluded that Webb had initiated his own action to recover his gambling losses in the Florida action. However, according to the Florida complaint and exhibits, Webb demanded the return of his deposits to the gambling websites and was not seeking to recover any gambling losses. Webb alleged that the Iaderosa defendants were engaged in a Ponzi-type scheme and did not actually place the bets that Webb requested. Based on the allegations in the Florida action, we find that Webb did not "pursue his remedy" to recover gambling losses, so Lawson's claims under the Loss Recovery Act were not barred by the Florida action.

¶ 12 Lawson also contends that the trial court erred in finding that she and Webb engaged in a conspiracy in violation of *Kizer v. Walden*, 198 Ill. 274 (1902). Lawson argues that the familial relationships in *Kizer* and *Staninger v. Tabor*, 103 Ill. App. 330 (1902),[3] were immaterial to their holdings and that the Iaderosa defendants did not allege or prove that Lawson and Webb were involved in a conspiracy to bring suit.

¶ 13 In *Kizer*, a brother brought suit against the defendants, who kept a gambling house to recover his brother's gambling losses under a prior version of the Loss Recovery Act (Ill. Ann. Stat., ch. 38, ¶ 255 (Starr & Curtis 1896)). *Kizer*, 198 Ill. at 279-80. The supreme court held that the trial court committed reversible error by not allowing questions to be asked of the gambling brother regarding whether he was advised to wait six months and then bring suit in his brother's name. *Id.* at 281-82. If it turned out that the gambling brother conspired to bring his own suit in his brother's name, then the suit could not be maintained because the statute provided a six-month window. *Id.* at 282. In an action similar to *Kizer* but decided a few months earlier, a wife brought suit to recover treble damages of the amount lost by her husband. Our court held that

> "in a suit brought to recover treble the amount of the losses, that the defendant should be allowed to prove, if he can, that while the suit is being prosecuted in the name of a third party it is really and truly the suit of the loser, and that he and the plaintiff have conspired together for the purpose of mulcting the defendant into the heavy penalty provided by the statute." *Staninger*, 103 Ill. App. at 334-35.

¶ 14 Under *Kizer* and *Staninger*, the question of whether the parties conspired is a factual question. The Iaderosa defendants may have sufficiently established that Lawson was Webb's mother, but that was not sufficient by itself to prove that the action was really Webb's suit. Any agreement to conspire was not evident from the face of the pleading or the documents in support of the motion to dismiss. Thus, we reverse the dismissal of Lawson's Loss Recovery Act claims on this basis as well.

¶ 15 Lastly, Lawson argues that *Dew-Becker v. Wu*, 2018 IL App (1st) 171675, ¶ 21, which held that the Loss Recovery Act was not intended to apply to gambling between two strangers facilitated by a third-party website, is distinguishable and does not preclude her claims. Lawson argues that, although Webb's wagers were placed through a website, Webb had a direct connection with the winners of the wagers, who actually operated and controlled the website through which the wagers were placed. Lawson has alleged that the Iaderosa defendants operated and controlled the two websites where Webb placed his wagers. Lawson has also

---

[3]Illinois Appellate Court decisions filed prior to 1935 are not binding precedent, but the court may consider their persuasive value. See *Bryson v. News America Publications*, 174 Ill. 2d 77, 95-96 (1996).

alleged that money was sent and received between Webb and the Iaderosa defendants at the home address of one of the Iaderosa defendants and that Webb wired money to specific bank accounts of two companies operated by the Iaderosa defendants. We find that Lawson's allegations in the instant complaint were sufficient to distinguish this case from *Dew-Becker*.

¶ 16                                    CONCLUSION
¶ 17          The judgment of the circuit court of Will County is reversed.

¶ 18          Reversed and remanded.