# Illinois Official Reports

## Supreme Court

---

### *Goldfine v. Barack, Ferrazzano, Kirschbaum & Perlman*,
### 2014 IL 116362

---

Caption in Supreme
Court:

MORTON S. GOLDFINE *et al.*, Appellees, v. BARACK,
FERRAZZANO, KIRSCHBAUM & PERLMAN *et al.*, Appellants.

Docket No.

116362

Filed

October 2, 2014

Held

(*Note: This syllabus
constitutes no part of the
opinion of the court but
has been prepared by the
Reporter of Decisions
for the convenience of
the reader.*)

Where stock purchasers, after their acquisitions became worthless,
reached a settlement with their broker and others on allegations of
statutory and common law fraud, but sued for malpractice their
attorneys who had negligently allowed claims under the Illinois
Securities Law of 1953 to become time-barred, the supreme court
rejected defendant lawyers' contentions that the 10% interest
provision of the 1953 law could not be used as a measure of damages
for the malpractice, either on the theory that it was applicable only to
those who actually violated that statute or by virtue of the ban on
punitive damages for legal malpractice; and the court held that interest
should be recalculated so as to be computed before, rather than after,
deducting for the earlier settlement, but should run only until its date.

Decision Under
Review

Appeal from the Appellate Court for the First District; heard in that
court on appeal from the Circuit Court of Cook County, the Hon.
Dennis J. Burke, Judge, presiding.

Judgment

Affirmed in part and reversed in part.
Cause remanded with directions.

Counsel on Appeal

J. Timothy Eaton, of Taft Stettinius & Hollister LLP, and Barry Levenstam, Irina Y. Dmitrieva, Kaija K. Hupila and Michael A. Scodro, of Jenner & Block LLP, all of Chicago, for appellants.

Edward T. Joyce and Rowena T. Parma, of the Law Offices of Edward T. Joyce & Associates, P.C., and Martin J. Oberman, all of Chicago, and Steven J. Plotkin, of Evanston, for appellees.

Michael T. Reagan, of Law Offices of Michael T. Reagan, of Ottawa, Daniel A. Cotter, of Chicago, and Paula Holderman and Charles J. Northrup, of Springfield, for *amici curiae* the Chicago Bar Association and the Illinois State Bar Association.

Leslie J. Rosen, of Chicago, for *amicus curiae* Illinois Trial Lawyers' Association.

Lisa Madigan, Attorney General, of Springfield (Carolyn E. Shapiro, Solicitor General, and Jane Elinor Notz, Deputy Solicitor General, of Chicago, of counsel), for *amicus curiae* Illinois Secretary of State.

Justices

JUSTICE KILBRIDE delivered the judgment of the court, with opinion.
Chief Justice Garman and Justices Freeman, Thomas, Karmeier, Burke, and Theis concurred in the judgment and opinion.

**OPINION**

¶ 1    At issue in this appeal is the application of the civil remedies provisions of section 13(A) of the Illinois Securities Law of 1953 (Illinois Securities Law) (815 ILCS 5/1 *et seq*. (West 2010)) in calculating damages in a legal malpractice action.

¶ 2    Plaintiffs, Morton and Adrienne Goldfine, brought a legal malpractice action against defendant law firm, Barack, Ferrazzano, Kirschbaum & Perlman, and several of the firm's partners, to recover damages as a result of defendants' failure to preserve their Illinois Securities Law cause of action against an investment firm.

¶ 3    The circuit court of Cook County ruled in plaintiffs' favor and awarded damages for plaintiffs' Illinois Securities Law claim losses. The appellate court affirmed the trial court's findings in favor of plaintiffs. However, the appellate court determined that the trial court failed to apply the correct mathematical formula to calculate plaintiffs' Illinois Securities

Law claim damages. The appellate court also determined the trial court's attorney fee award was based on its incorrect damage calculation. Accordingly, the appellate court reversed the trial court's award of damages and attorney fees and remanded the case to the trial court for a recalculation of damages and attorney fees. 2013 IL App (1st) 111779.

¶ 4  We allowed defendants' petition for leave to appeal. Ill. S. Ct. R. 315 (eff. July 1, 2013). We now affirm in part and reverse in part and remand to the trial court.

¶ 5                              BACKGROUND

¶ 6  Plaintiffs' malpractice claim against defendants is predicated on an underlying cause of action against Shearson Lehman Brothers Holding, Inc. (Shearson), and other individuals and firms (Shearson defendants) for violations of the Illinois Securities Law. That cause of action arose from plaintiffs' purchases of First Capital Holdings (FCH) stock through Shearson's broker, Michael Steinberg, who was the office manager of Shearson's Peoria, Illinois, office, and a close personal friend of the plaintiffs. Plaintiffs purchased FCH stock between 1987 and 1990.

¶ 7  FCH filed for bankruptcy in 1991, and plaintiffs' FCH stock became worthless. That same year, plaintiffs retained defendant law firm to represent them in claims arising from their purchases of the FCH stock. When plaintiffs retained defendant law firm, they had a viable claim against the Shearson defendants for rescission under the Illinois Securities Law. Defendants, however, failed to preserve plaintiffs' cause of action under the Illinois Securities Law by failing to serve the required rescission notice.

¶ 8  In 1992, plaintiffs hired new counsel to pursue their claims against the Shearson defendants. Plaintiffs' complaint included their Illinois Securities Law claim, but that claim was dismissed by the circuit court as time-barred.

¶ 9  In 1994, plaintiffs filed a malpractice action against the defendant law firm and several of its partners to recover damages plaintiffs would have recovered under the Illinois Securities Law if defendants had properly preserved plaintiffs' claim. In 1996, plaintiffs moved to transfer the malpractice action to the circuit court's commercial calendar. Defendants agreed not to oppose the transfer only if plaintiffs agreed to stipulate that the trial of plaintiffs' malpractice claim would take place only after all claims in the underlying *Steinberg* case were tried or otherwise resolved. Accordingly, a stipulated order was entered delaying the malpractice trial until resolution of the underlying *Steinberg* case.

¶ 10  In 1999, plaintiffs' remaining claims in the underlying *Steinberg* case were dismissed by the circuit court. The appellate court affirmed the dismissal of the Illinois Securities Law claim as untimely, but reversed and remanded to the trial court plaintiffs' claims against the Shearson defendants for common law fraud and violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) (815 ILCS 505/1 *et seq.* (West 2004)). *Goldfine v. Steinberg*, No. 1-00-1004 (2004) (unpublished order under Supreme Court Rule 23). In 2007, plaintiffs settled those claims for $3.2 million.

¶ 11  After reaching settlement in the underlying *Steinberg* case, the legal malpractice case proceeded to a bench trial that lasted over eight weeks. On July 12, 2010, the trial court found that defendant law firm breached its duties to plaintiffs by failing to preserve plaintiffs' Illinois Securities Law claim and that the loss of that claim was caused by defendant law firm's negligent conduct. The trial court ruled that plaintiffs' damages would be calculated

according to the following formula: plaintiffs' $3.2 million settlement would be deducted from the total they paid for their 11 stock purchases, and then 10% interest would be calculated on the remaining amount based on the various dates of the stock purchases. The trial court ordered the parties to calculate the exact amount to enter in a judgment order, ordered plaintiffs to prepare the judgment order, and gave plaintiffs leave to file a petition for attorney fees.

¶ 12 On May 24, 2011, the trial court entered its judgment, adopting the securities purchase price and interest calculation proposed by defendants. Specifically, the trial court took the sum of $4,506,602.05, representing the total of plaintiffs' 11 stock purchases in 1988, 1989, and 1990, and deducted the 2007 *Steinberg* settlement of $3.2 million. Because the stocks were purchased on 11 different dates, the trial court applied a "proportionate reduction of $3,200,000.00 (71.00693%)" to each purchase to obtain a "net" purchase price for each of the 11 stock purchases. The total sum of those net purchase prices was $1,306,602.29. Using the net purchase price for each of the 11 purchases and the corresponding date of sale for each purchase, the trial court then calculated a 10% annual interest award, through May 24, 2011, of $2,785,149.19, for a total award of $4,091,752.19. The trial court also awarded plaintiffs attorney fees of 40% of the total award, or $1,636,700.80, and $207,167.28 in costs and expenses. The trial court entered a judgment totaling $5,935,610.10.

¶ 13 Plaintiffs appealed, arguing that the trial court failed to calculate their statutory damages according to the mathematical formula in section 13(A) of the Illinois Securities Law. Plaintiffs also argued that the trial court erred in failing to award reasonable attorney fees, expenses and costs.

¶ 14 Defendants cross-appealed, arguing that the award of interest, attorney fees and costs should be reversed because the fee-shifting and interest provisions of section 13(A) of the Illinois Securities Law are punitive and coercive and, thus, fall within the category of damages barred by statute in legal malpractice actions. Defendants also argued that the trial court erred in finding that plaintiffs proved their underlying Illinois Securities Law claim.

¶ 15 The appellate court affirmed the circuit court's findings that plaintiffs proved their underlying Illinois Securities Law claim and legal malpractice action. The appellate court also affirmed the circuit court's award of plaintiffs' costs and expenses. The appellate court, however, determined that the circuit court failed to apply the correct mathematical formula to calculate plaintiffs' damages under the Illinois Securities Law. Specifically, the appellate court held there was no basis for the trial court to deduct the $3.2 million settlement from the purchase prices before calculating interest. Additionally, the appellate court held that the trial court's attorney fees award was incorrect based on a percentage of its erroneous damage calculation. Accordingly, the appellate court reversed the circuit court's award of damages and attorney fees and remanded the case to the trial court to recalculate plaintiffs' damages, to determine a reasonable amount of attorney fees based on the correct calculation of damages, and to award plaintiffs attorney fees and costs incident to the appeal.

¶ 16 We allowed defendants' petition for leave to appeal. Ill. S. Ct. R. 315 (eff. July 1, 2013). We allowed the Chicago Bar Association and the Illinois State Bar Association to file a joint *amicus* brief. We also allowed the Illinois Secretary of State, Securities Department, and the Illinois Trial Lawyers' Association to file *amicus* briefs. Ill. S. Ct. R. 345 (eff. Sept. 20, 2010).

¶ 17 ANALYSIS

¶ 18 This case turns on the proper calculation of plaintiffs' damages in a legal malpractice action. Specifically, the issue is whether the lower courts erroneously compensated plaintiffs for the civil remedies they would have recovered in their underlying Illinois Securities Law claim but for defendants' legal malpractice. Those presumed damages included plaintiffs' loss of investment, plus statutory interest on their lost investments, attorney fees, and costs.

¶ 19 Defendants argue that the Illinois Securities Law does not authorize imposing those damages on negligent lawyers and that its civil remedies apply only to those who actually violate the Illinois Securities Law. Defendants further contend that the civil remedies provided by section 13(A) of the Illinois Securities Law constitute punitive damages and are, thus, barred in legal malpractice actions. If this court determines that the civil remedies of section 13(A) of the Illinois Securities Law are applicable to calculate plaintiffs' total damages in this legal malpractice action, both parties dispute the lower courts' calculation of damages. We first address whether the lower courts properly applied the civil remedies provisions of section 13(A) of the Illinois Securities Law to calculate plaintiffs' damages in this legal malpractice case.

¶ 20 The applicability of the civil remedies provisions of section 13(A) of the Illinois Securities Law (815 ILCS 5/13(A) (West 2010)) in calculating damages in a legal malpractice action is the focus of this appeal. We review *de novo* this question of law. See *Kankakee County Board of Review v. Property Tax Appeal Board*, 226 Ill. 2d 36, 51 (2007). This appeal also presents a question of statutory interpretation, subject to *de novo* review. *People v. Davison*, 233 Ill. 2d 30, 40 (2009).

¶ 21 This court's primary objective in interpreting a statute is to ascertain and give effect to the intent of the legislature. *Solon v. Midwest Medical Records Ass'n*, 236 Ill. 2d 433, 440 (2010). The most reliable indication of the legislature's intent is the language of the statute, given its plain and ordinary meaning. *Solon*, 236 Ill. 2d at 440. "[W]hen the language of the statute is clear, it must be applied as written without resort to aids or tools of interpretation." *DeLuna v. Burciaga*, 223 Ill. 2d 49, 59 (2006). We begin by reviewing the relevant provisions of the Illinois Securities Law.

¶ 22 Section 13 of the Illinois Securities Law provides for private and other civil remedies. Section 13(A) provides the civil remedies relevant to this appeal:

"§ 13. Private and other civil remedies; securities.

A. Every sale of a security made in violation of the provisions of this Act shall be voidable at the election of the purchaser exercised as provided in subsection B of this Section; and the issuer, controlling person, underwriter, dealer or other person by or on behalf of whom said sale was made, and each underwriter, dealer or salesperson who shall have participated or aided in any way in making the sale, and in case the issuer, controlling person, underwriter or dealer is a corporation or unincorporated association or organization, each of its officers and directors (or persons performing similar functions) who shall have participated or aided in making the sale, shall be jointly and severally liable to the purchaser as follows:

(1) for the full amount paid, together with interest from the date of payment for the securities sold at the rate of the interest or dividend stipulated in the securities sold (or if no rate is stipulated, then at the rate of 10% per annum) less any income

or other amounts received by the purchaser on the securities, upon offer to tender to the seller or tender into court of the securities sold or, where the securities were not received, of any contract made in respect of the sale; or

(2) if the purchaser no longer owns the securities, for the amounts set forth in clause (1) of this subsection A less any amounts received by the purchaser for or on account of the disposition of the securities.

If the purchaser shall prevail in any action brought to enforce any of the remedies provided in this subsection, the court shall assess costs together with the reasonable fees and expenses of the purchaser's attorney against the defendant. Any provision of this subsection A to the contrary notwithstanding, the civil remedies provided in this subsection A shall not be available against any person by reason of the failure to file with the Secretary of State, or on account of the content of, any report of sale provided for in subsection G or P of Section 4, paragraph (2) of subsection D of Sections 5 and 6, or paragraph (2) of subsection F of Section 7 of this Act." 815 ILCS 5/13(A) (West 2010).

¶ 23 Defendants claim that section 13(A) civil remedies were not intended to be applied to negligent attorneys in a legal malpractice action because the Illinois Securities Law makes no provision for awarding such damages against negligent lawyers. Rather, defendants submit that section 13(A) civil remedies are applicable only to those who violate the Illinois Securities Law. Accordingly, defendants contend it was error for the lower courts to compensate plaintiffs for losses the plaintiffs would have recovered under section 13(A) in the underlying *Steinberg* case.

¶ 24 Illinois law on malpractice damages is well-established:

"In order to recover damages in a legal malpractice action in Illinois, a plaintiff must establish what the result would have been in the underlying action which was improperly litigated by the plaintiff's former attorney. See, *e.g.*, *Nika v. Danz*, 199 Ill. App. 3d 296, 308 (1990) (malpractice plaintiff must litigate a ' "suit within a suit" ' or ' "trial-within-a-trial" '), quoting 2 R. Mallen & J. Smith, Legal Malpractice § 27.7, at 641 (3d ed. 1989). The basis of the legal malpractice claim is that the plaintiff would have been compensated for an injury caused by a third party, absent negligence on the part of the plaintiff's attorney. *Nika*, 199 Ill. App. 3d at 308; *Glass v. Pitler*, 276 Ill. App. 3d 344, 349 (1995). The injuries resulting from legal malpractice are not personal injuries but, instead, are pecuniary injuries to intangible property interests. *Glass*, 276 Ill. App. 3d at 349, citing *Gruse v. Belline*, 138 Ill. App. 3d 689 (1985). The plaintiff must affirmatively prove that he suffered actual damages as a result of the attorney's malpractice (*Glass*, 276 Ill. App. 3d at 349), and a plaintiff who obtains recovery in a malpractice suit can be 'in no better position by bringing suit against the attorney than if the underlying action against the third-party tortfeasor had been successfully prosecuted' (*Bloome v. Wiseman, Shaikewitz, McGivern, Wahl, Flavin & Hesi, P.C.*, 279 Ill. App. 3d 469, 478 (1996)). *Thus, a plaintiff's damages in a malpractice suit are limited to the actual amount the plaintiff would have recovered had he been successful in the underlying case.*" (Emphasis added.) *Eastman v. Messner*, 188 Ill. 2d 404, 411-12 (1999).

¶ 25       While it is true that the Illinois Securities Law makes no specific provision for imposing damages on negligent lawyers, we point out that defendants' argument is premised on the misconception that the civil remedies provided under section 13(A) of the Illinois Securities Law are being applied directly to them. The damage award in this legal malpractice action compensates the plaintiffs for the actual amount the plaintiffs would have recovered had they been successful in the Illinois Securities Law claim in the underlying *Steinberg* case. Contrary to defendants' assertion, the Illinois Securities Law is not being applied directly to defendants. Rather, section 13(A) of the Illinois Securities Law simply establishes plaintiffs' actual damages resulting from defendants' legal malpractice.

¶ 26       It is undisputed that defendants were found negligent for failing to preserve plaintiffs' cause of action under the Illinois Securities Law. It is also undisputed that, as a result of defendants' failure to preserve plaintiffs' cause of action, plaintiffs were prevented from collecting civil remedies under section 13(A) of the Illinois Securities Law in the underlying *Steinberg* case. Plaintiffs suffered substantial losses that were directly and proximately caused by defendants' negligence and constitute actual damages suffered by plaintiffs as a result of defendants' legal malpractice. Defendants do not dispute that plaintiffs would have recovered the civil remedies under section 13(A) had defendants not breached their duty and failed to preserve plaintiffs' Illinois Securities Law claim. As a result, defendants are liable to plaintiffs for those losses that were directly caused by defendants' legal negligence and constitute actual damages suffered by plaintiffs as a result of defendants' legal malpractice. See *Eastman*, 188 Ill. 2d at 411-12. Simply put, the civil remedies provided under section 13(A) of the Illinois Securities Law are merely the mechanism used to compute plaintiffs' actual losses caused by defendants' legal malpractice.

¶ 27       Defendants also assert they should not be held liable for plaintiffs' lost interest under section 13(A) because it puts attorneys in the untenable position of having to wait helplessly on the sidelines as interest accumulates while the underlying case is being resolved. We note that it was defendants who insisted that plaintiffs agree to stay the legal malpractice action pending resolution of the *Steinberg* case. While plaintiffs' damages arguably could not be fully ascertained until the underlying *Steinberg* case was resolved, nothing prohibited defendants from attempting to settle the legal malpractice action with plaintiffs, particularly given the known risk of the extent of damages in this case based on plaintiffs' significant investment loss. This court's "responsibilities as a court of review do not extend to protecting a party from its own failed trial strategy" (*Giese v. Phoenix Co. of Chicago, Inc.*, 159 Ill. 2d 507, 514-15 (1994)). Nevertheless, defendants argue that compensation for plaintiffs' lost section 13(A) civil remedies constitute punitive damages that are barred in legal malpractice actions by section 2-1115 of the Code of Civil Procedure (Code) (735 ILCS 5/2-1115 (West 2010)). Section 2-1115 of the Code provides:

        "Punitive damages not recoverable in healing art and legal malpractice cases. In all cases, whether in tort, contract or otherwise, in which the plaintiff seeks damages by reason of legal, medical, hospital, or other healing art malpractice, no punitive, exemplary, vindictive or aggravated damages shall be allowed." 735 ILCS 5/2-1115 (West 2010).

¶ 28       Whether the civil remedy provisions of section 13(A) of the Illinois Securities Law constitute punitive damages barred under section 2-1115 involves an issue of law that we

review *de novo. Kankakee County Board of Review*, 226 Ill. 2d at 51. This court has determined that a statute is a "penalty" if it is "in the nature of punishment for the nonperformance of an act or for the performance of an unlawful act." *Hoffmann v. Clark*, 69 Ill. 2d 402, 429 (1977); see also *M.H. Vestal Co. v. Robertson*, 277 Ill. 425, 428-29 (1917). Moreover, a penal statute requires the transgressor to pay a penalty without regard to proof of any actual monetary injury sustained. See *Babcock v. Harrsch*, 310 Ill. 413, 417 (1923).

¶ 29 Defendants argue that the civil remedies provisions of section 13(A) are coercive and punitive in nature because those remedies, as applied in a legal malpractice action, neither punish the actual wrongdoers nor compel compliance with securities laws. Defendants argue that the damages in this case are punitive, primarily because of the potential size of the damage award on remand. Defendants cite to *Foreman v. Holsman*, 10 Ill. 2d 551, 553-54 (1957), in support of their argument that section 13(A) civil remedies constitute punitive damages.

¶ 30 *Foreman* does not support defendants' argument that section 13(A) civil remedies constitute punitive damages. While *Foreman* stated that the civil remedies provision of the Illinois Securities Law "is intended to afford an additional punishment for an offending party" (*Foreman*, 10 Ill. 2d at 553-54), this court did not discuss the interest provision at issue in this case, nor did this court specifically examine whether section 13(A) civil remedies constitute punitive damages or were intended to be remedial. In fact, this court has never before squarely addressed the issue of whether section 13(A) civil remedies constitute punitive damages. Similarly, none of the appellate court cases cited by defendants (*Jacobs v. James*, 215 Ill. App. 3d 499 (1991); *Condux v. Neldon*, 83 Ill. App. 3d 575 (1980); *Bain v. Financial Security Life Insurance Co.*, 53 Ill. App. 3d 702 (1977); *Gowdy v. Richter*, 20 Ill. App. 3d 514 (1974)) support defendants' contention because none of those cases examined or held that section 13(A) civil remedies constitute punitive damages. We therefore examine whether the civil remedies of section 13(A) of the Illinois Securities Law constitute punitive or remedial damages as an issue of first impression before this court.

¶ 31 The law on analyzing whether statutory provisions are punitive or remedial is well-established. This court summarized Illinois law with respect to this issue in *Landis v. Marc Realty, L.L.C.*, 235 Ill. 2d 1 (2009):

> "[A] statutory penalty must: (1) impose automatic liability for a violation of its terms; (2) set forth a predetermined amount of damages; and (3) impose damages without regard to the actual damages suffered by the plaintiff." *Landis*, 235 Ill. 2d at 13 (citing *McDonald's Corp. v. Levine*, 108 Ill. App. 3d 732, 738 (1982), citing *Hoffmann*, 69 Ill. 2d at 429).

¶ 32 A remedial statute, on the other hand, imposes liability for actual damages suffered by the plaintiff as a result of a violation of the statute. *Landis*, 235 Ill. 2d at 13. Liability under a remedial statute " 'is contingent upon damage being proven by the plaintiff.' " *Landis*, 235 Ill. 2d at 13 (quoting *McDonald's Corp. v. Levine*, 108 Ill. App. 3d at 738, citing *Vestal*, 277 Ill. at 429-30).

¶ 33 Section 13(A) civil remedies include interest on the securities, attorney fees and costs. None of those remedies are imposed as a predetermined amount without regard to the actual damages suffered by the plaintiff. Rather, each of the section 13(A) civil remedies is a component of remedial damages intended to compensate plaintiffs who prove actual damages

resulting from a violation of the Illinois Securities Law. The Illinois Securities Law contains no express provision for recovery of "punitive damages." It is clear that the purpose of private civil remedies provided by the Illinois Securities Law is to compensate plaintiffs for their actual monetary losses. Section 13(A) provides for return of the full amount paid for the securities, together with interest "at the rate of the interest or dividend stipulated in the securities sold (or if no rate is stipulated, then at the rate of 10% per annum)." The plain language of section 13(A) indicates the rate is intended to be compensatory, not punitive. The controlling rate is the amount stated in the securities. Thus, the statute compensates the investor for the return on investment stated in the purchased securities. If no rate is stipulated, the default rate is 10%. The plain language of the statute indicates intent to compensate investors for their lost return and to make the investor whole. Accordingly, we hold that section 13(A) remedies do not constitute punitive damages prohibited by section 2-1115 of the Code.

¶ 34    Defendants also rely on this court's ruling in *Tri-G, Inc. v. Burke, Bosselman & Weaver*, 222 Ill. 2d 218 (2006), in arguing that section 13(A) civil remedies cannot be imposed on negligent lawyers. In *Tri-G*, the plaintiff brought a legal malpractice action against a law firm for failing to prosecute its lawsuit against a bank. The underlying lawsuit against the bank alleged breach of contract, common law fraud, and violation of the Consumer Fraud Act. The lawsuit was dismissed with prejudice after plaintiff's counsel was not prepared to proceed when the case was called for trial. Plaintiff was awarded compensatory and lost punitive damages against the law firm in the legal malpractice action. This court held that lost punitive damages are not recoverable in a subsequent legal malpractice action under section 2-1115 of the Code. *Tri-G*, 222 Ill. 2d at 267-68. We have already determined, however, that section 13(A) civil remedies are not punitive damages prohibited by section 2-1115 of the Code. Accordingly, *Tri-G*'s holding concerning punitive damages is inapplicable.

¶ 35    Defendants also argue that section 13(A)'s civil remedy of statutory interest is prohibited under *Tri-G*. In *Tri-G*, this court rejected the plaintiff's claim for postjudgment interest under section 2-1303 of the Code (735 ILCS 5/2-1303 (West 2002)) recoverable on a "hypothetical" judgment in the underlying case absent the legal malpractice. *Tri-G*, 222 Ill. 2d at 258. This court recognized in *Tri-G* that the right to interest in an action at law:

> " 'does not emanate from the controversy, or from the judgment, or from anything of a judicial nature. *** The recovery of interest in this State, not contracted for, finds its only authority in the statute. It is purely statutory.' " *Tri-G*, 222 Ill. 2d at 256 (quoting *Blakeslee's Storage Warehouses, Inc. v. City of Chicago*, 369 Ill. 480, 483 (1938)).

¶ 36    We acknowledged that an exception to this rule exists in equity, but since a legal malpractice action is an action at law, the exception is inapplicable. *Tri-G*, 222 Ill. 2d at 257-58. Accordingly, in *Tri-G*, this court agreed with the appellate court's holding that section 2-1303 postjudgment interest applies only to judgments recovered, and not to judgments that should have been recovered. *Tri-G*, 222 Ill. 2d at 256. We also determined that prejudgment interest is not available in legal malpractice cases. *Tri-G*, 222 Ill. 2d at 258.

¶ 37    *Tri-G* is distinguishable on this point. This appeal does not involve interest on a hypothetical judgment. Section 13(A) does not involve prejudgment or postjudgment interest. Section 13(A) interest is not based on the amount of judgment. Rather, section 13(A) interest

is calculated based on the amount of the plaintiff's investment in securities. The interest is a component of the remedial relief that plaintiffs would have recovered under the Illinois Securities Law if defendants had not negligently failed to preserve plaintiffs' claim. Defendants do not dispute that plaintiffs would have recovered section 13(A) interest in the underlying cause of action.

¶ 38    Alternatively, defendants argue that this court should reverse the appellate court opinion because it ordered a grossly excessive award that is speculative and violates *Eastman*, 188 Ill. 2d 404, as well as state and federal due process guarantees. Defendants claim that the appellate court opinion violates *Eastman* because it awarded plaintiffs interest until final judgment in the malpractice case. In fact, defendants argue that plaintiffs should be barred from recovering any statutory interest because they failed to prove when they reasonably would have recovered on the underlying Illinois Securities Law claim.

¶ 39    We agree with defendants that awarding statutory interest through the final date of judgment in the malpractice action violates *Eastman* because it awards plaintiffs damages beyond the date they would have recovered interest in the underlying action. See *Eastman*, 188 Ill. 2d at 412 ("a plaintiff's damages in a malpractice suit are limited to the actual amount the plaintiff would have recovered had he been successful in the underlying case"). However, nothing in *Eastman* precludes plaintiffs from recovering the statutory interest they would have recovered in the underlying *Steinberg* action.

¶ 40    We reject defendants' argument that plaintiffs should be barred from recovering any statutory interest because they failed to prove a date when they reasonably would have recovered on the underlying Illinois Securities Law claim. Defendants cite to *Tri-G*, 222 Ill. 2d at 254-55, to support their argument that a plaintiff is required to prove the date they would have recovered in the underlying action absent attorney malpractice. In *Tri-G*, the plaintiff sought prejudgment interest from the date the third-party tortfeasor committed the acts in the underlying case to the approximate date a verdict would have been entered against the third-party tortfeasor but for the attorney's negligence. In *Tri-G*, this court did not examine or find that the plaintiff proved, or was required to prove, a hypothetical date when the plaintiff would have recovered in the underlying cause of action. In other words, *Tri-G* does not support defendant's argument. Defendants cite to no authority holding that plaintiffs in a legal malpractice action must prove a hypothetical date when they reasonably would have recovered damages in an underlying cause of action that was barred due to the attorney's negligence.

¶ 41    Defendants also argue that the appellate court opinion violates *Eastman* because it awarded interest on the $3.2 million plaintiffs recovered that did not constitute malpractice damages. We reject this argument. It is clear that plaintiffs would have received statutory interest on the entire amount they paid for the securities in the underlying *Steinberg* cause of action if defendants had preserved their Illinois Securities Law cause of action. Those losses constitute actual damages and do not, therefore, violate *Eastman*.

¶ 42    Defendants argue that if this court determines that awarding interest on the entire investment did not violate *Eastman*, awarding interest *after* June 21, 2007, the date the plaintiffs settled all claims in the *Steinberg* action, was erroneous. Defendants claim that any recovery of interest after June 21, 2007, exceeds what plaintiffs would have recovered in the underlying suit, and therefore violates *Eastman*. We agree with defendants on this point. As

we have already held, awarding statutory interest through the final date of judgment in the malpractice action violates *Eastman* because it awards plaintiffs damages beyond the date they would have recovered interest in the underlying *Steinberg* action. We reiterate, however, that nothing in *Eastman* precludes plaintiffs from recovering the statutory interest they would have recovered in the underlying *Steinberg* action. We will address this issue in greater detail in our analysis of the proper calculation of section 13(A) damages.

¶ 43 Defendants next contend that awarding statutory interest plus attorney fees is grossly excessive and violates the United States and Illinois Constitutions' prohibitions against grossly excessive penalties in violation of due process of law. U.S. Const., amend. XIV, § 1; Ill. Const. 1970, art. I, § 2. Defendants claim the Illinois Securities Law is unconstitutional as applied here. According to defendants, awarding statutory interest plus attorney fees in this case transforms an actual minimal loss into grossly excessive damages on lawyers "who were merely negligent."

¶ 44 "The Due Process Clause of the Fourteenth Amendment prohibits a State from imposing a 'grossly excessive' punishment on a tortfeasor." (Internal quotation marks omitted.) *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 562 (1996). In *BMW of North America*, the United States Supreme Court set three guideposts for determining whether the punishment a State imposes on a tortfeasor under State law violates the U.S. Constitution: (1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded and the civil penalties authorized or imposed in comparable cases. *BMW of North America*, 517 U.S. at 574-75.

¶ 45 In *International Union of Operating Engineers, Local 150 v. Lowe Excavating Co.*, 225 Ill. 2d 456, 466-67 (2006), this court held that due process "prohibits the imposition of grossly excessive or arbitrary punishments on a tortfeasor." This court adopted the Supreme Court's framework in *BMW of North America*, recognizing that " 'the most important indicium of the reasonableness of a punitive damages award is the degree of reprehensibility of the defendant's conduct.' " *International Union of Operating Engineers*, 225 Ill. 2d at 470 (quoting *BMW of North America*, 517 U.S. at 575).

¶ 46 Defendants' argument wrongly assumes the award of statutory interest under section 13(A) amounts to punitive damages. We have already rejected this argument. Defendants, however, argue that nothing in either the State or Federal Due Process Clauses limits their reach to punitive damages. Defendants focus on the amount of a total potential award of both interest plus attorney fees in this case. Defendants argue this would amount to an excessive judgment. We disagree. The amount of statutory interest simply constitutes plaintiffs' actual damages incurred on their loss of investment income on $4.5 million as a result of defendants' negligence. The appellate court already determined the trial court must reconsider the attorney fee award on remand, and that amount has yet to be determined. We do not know what the trial court will determine is a reasonable attorney fee on remand, and that issue is beyond the scope of this appeal. However, as we address below, both lower courts erred in calculating the plaintiffs' statutory interest damages. The result is neither grossly excessive, nor will a proper calculation of damages result in a windfall recovery to plaintiffs. Rather, a proper calculation of damages simply compensates plaintiffs for the

damages they would have recovered from the third-party tortfeasor in the underlying action but for defendants' negligence in failing to preserve plaintiffs' cause of action.

¶ 47     Accordingly, we hold that the lower courts did not err as a matter of law in using the civil remedy provisions of section 13(A) of the Illinois Securities Law to measure plaintiffs' damages in this legal malpractice action. We do, however, disagree with the lower courts' calculation of plaintiffs' damages. We now address the proper application of section 13(A) in calculating plaintiffs' damages in this legal malpractice action.

¶ 48     The proper interpretation and application of the Illinois Securities Law is a question of law and, thus, we review the application of section 13(A) in measuring plaintiffs' damages *de novo*. *Woods v. Cole*, 181 Ill. 2d 512, 516 (1998). Again, the primary objective in interpreting a statute is to ascertain and give effect to the intent of the legislature, and the most reliable indication of legislative intent is the language of the statute, given its plain and ordinary meaning. *Solon*, 236 Ill. 2d at 440. "[W]hen the language of the statute is clear, it must be applied as written without resort to aids or tools of interpretation." *DeLuna*, 223 Ill. 2d at 59.

¶ 49     Sections 13(A)(1) and (2) of the Illinois Securities Law provide the statutory damages as follows:

"(1) for the full amount paid, together with interest from the date of payment for the securities sold at the rate of the interest or dividend stipulated in the securities sold (or if no rate is stipulated, then at the rate of 10% per annum) less any income or other amounts received by the purchaser on the securities, upon offer to tender to the seller or tender into court of the securities sold or, where the securities were not received, of any contract made in respect of the sale; or

(2) if the purchaser no longer owns the securities, for the amounts set forth in clause (1) of this subsection A less any amounts received by the purchaser for or on account of the disposition of the securities." 815 ILCS 5/13(A)(1), (2) (West 2010).

¶ 50     Section 13(A) provides a straightforward method for calculating plaintiffs' damages for defendants' failure to preserve their Illinois Securities Law claim. Plaintiffs would have recovered "the full amount paid, together with interest from the date of payment for the securities sold," less "any amount received." We find that the statute unambiguously requires the calculation of interest prior to deducting any amounts received by the purchaser of the securities. Accordingly, we affirm the appellate court's determination that the trial court erroneously applied a proportionate reduction of the plaintiffs' $3.2 million *Steinberg* settlement to each of the 11 securities purchases prior to calculating interest. The interest must be calculated by the trial court prior to deducting the $3.2 million settlement.

¶ 51     Defendants claim that plaintiffs should not be awarded interest on the $3.2 million settlement. However, defendants fail to recognize that plaintiffs lost the interest on their total securities investment when defendants failed to preserve their Illinois Securities Law claim. Any calculation of interest must include compensation for plaintiffs' loss of interest on their entire $4.5 million investment.

¶ 52     The statute requires interest calculated "from the date of payment" for the securities. Under a plain reading of the statute, the trial court is required to calculate interest on each of the 11 securities from the date of purchase. The parties dispute whether the statutory interest should be calculated to the 2007 settlement date of the underlying *Steinberg* action, or to the

2011 date of the final judgment in the legal malpractice action. Plaintiffs further submit that interest should be calculated to the date of payment of the judgment. Under plaintiffs' argument, interest presently continues to accumulate, some seven years beyond the date of the *Steinberg* settlement. Understandably, defendants conclude that awarding interest to the date of payment of the judgment would result in extraordinary legal malpractice damages. Defendants as well as the Chicago Bar Association and the Illinois State Bar Association as *amici* present serious and compelling arguments of the consequences of imposing extraordinary liability on attorneys as well as the practical ramifications on the practicing bar. Given the disposition in this case, the plaintiffs' ultimate recovery will compensate plaintiffs for the loss of their investment due to defendants' negligence in failing to preserve plaintiffs' Illinois Securities Law claim.

¶ 53    The appellate court determined that the trial court correctly calculated interest through the 2011 final judgment date in the legal malpractice action. As we have already indicated, calculating interest to the date of the final judgment in the legal malpractice action violates *Eastman*, 188 Ill. 2d 404. We hold that the interest should have been calculated to the date of the 2007 settlement of the *Steinberg* action. The measure of damages in the legal malpractice action is the amount the plaintiffs would have recovered in the underlying *Steinberg* action for their Illinois Securities Law claim. The entire *Steinberg* action was concluded in 2007. Plaintiffs could not have recovered interest on their Illinois Securities Law claim in the *Steinberg* action after the 2007 settlement date. By calculating interest to 2011, the lower courts misapplied section 13(A).

¶ 54    Accordingly, on remand, the trial court must recalculate the interest on each of the securities to the date of the 2007 *Steinberg* settlement. The recalculation of interest should then be added to the full amount paid for all of the securities. Section 13(A)(2) then requires a deduction for any amount received by the purchaser on account of the disposition of the securities when the purchaser no longer owns the securities. Therefore, the trial court must deduct the plaintiffs' $3.2 million settlement after recalculating the interest.

¶ 55    Plaintiffs requested cross-relief, arguing that the entire $3.2 million settlement should not be deducted from their damage award because they actually received only $1,657,000 of that settlement and they expended $1,543,000 in costs and attorney fees to obtain the $3.2 million settlement. In the underlying *Steinberg* cause of action, the plaintiffs and the Shearson defendants entered into a settlement agreement after plaintiffs' Illinois Securities Law claim was dismissed with prejudice as time-barred. That dismissal was affirmed on appeal. Plaintiffs' settlement in the underlying *Steinberg* action was not structured into an award of damages plus attorney fees and costs. Rather, plaintiffs' settlement represented their agreement to settle all disputes and claims that could have been asserted. Plaintiffs agreed to a joint motion to obtain a dismissal with prejudice of the underlying lawsuit, with the parties "to bear their own costs and attorneys' fees." Plaintiffs' expenditures for attorney fees and costs were simply their cost of litigation pursuing their common law fraud and Consumer Fraud Act claims. Accordingly, under section 13(A), the entire $3.2 million settlement constitutes "other amounts received by the purchaser on the securities." Section 13(A) makes no provision for the deduction of attorney fees or costs from those "other amounts received." Thus, we reject plaintiff's argument that the entire $3.2 million should not be deducted from their damage award.

¶ 56　　The appellate court in this case also held that the trial court's attorney fees award was based on a percentage of its incorrect damage calculation. The trial court awarded plaintiffs $1,636,700.80 in attorney fees, calculated by applying a 40% contingency fee to its erroneous Illinois Securities Law damage award calculation of $4,091,752.19. The appellate court noted that the trial court could base an attorney fee award on either a fair percentage of recovery, or the value of the time expended by counsel. The appellate court stated that it "would not assume that the trial court, which considered the connection between the fees sought and the amount of the award, would have awarded plaintiffs a 40% contingent fee of a much larger Illinois Securities Law damage award based on plaintiffs' purchase price, plus 10% interest, less the $3.2 million settlement." Accordingly, the appellate court reversed the attorney fee award and remanded the case to the trial court to determine reasonable attorney fees based on the correct amount of plaintiffs' Illinois Securities Law damages. The parties do not contest this part of the appellate court's judgment. Thus, the award of attorney fees in this case is not at issue and not addressed in this opinion.

¶ 57　　In sum, we hold that the lower courts failed to apply the correct mathematical formula to calculate plaintiffs' statutory interest award for damages under section 13(A) of the Illinois Securities Law. Accordingly, we remand this cause to the circuit court to calculate plaintiffs' statutory interest damages on the full amount paid for each security from the date of purchase to the 2007 date of settlement in the *Steinberg* action, and then to deduct the plaintiffs' $3.2 million recovery in the *Steinberg* action. The issue of attorney fees and costs are left for the trial court to resolve on remand.

¶ 58　　　　　　　　　　　　　　　　CONCLUSION

¶ 59　　For the foregoing reasons, we affirm the appellate court's judgment in part and reverse in part, and remand for further proceedings consistent with this opinion.

¶ 60　　Affirmed in part and reversed in part.

¶ 61　　Cause remanded with directions.